CRAIG B. FRIEDBERG, ESQ.
Nevada Bar No.  004606
4760 South Pecos Road, Suite 103
Las Vegas, Nevada 89121
Phone: (702) 435-7968; Fax: (702) 946-0887

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MARK R. GOODMAN, | CASE NO.:   2:13-cv-726 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| COMMONWEALTH FINANCIAL SYSTEMS, INC., a/k/a NORTHEAST CREDIT AND COLLECTIONS, a foreign corporation, DOES I-V inclusive, and ROE Corporations VI-X, inclusive, | [Eight Person Jury Demanded] |
| Defendants. | |

## PRELIMINARY STATEMENT

1.     This is a claim for actual and statutory damages brought by the named plaintiff, MARK R. GOODMAN (hereinafter referred to as "Plaintiff" or "Goodman"), against Defendant COMMONWEALTH FINANCIAL SYSTEMS, INC., a/k/a/ NORTHEAST CREDIT AND COLLECTIONS (hereinafter "Defendant" or Commonwealth") of the Fair Debt Collection Practices Act (hereinafter referred to as the "FDCPA"), 15 U.S.C. §1692, et seq., and Nevada Revised Statutes (hereinafter "NRS"), Chapters 598 et seq., and 649 et seq., as amended, and common law torts (hereinafter "State Acts"), all of which prohibit debt collectors from engaging in abusive, deceptive, harassing, unfair, and illegal practices.

## JURISDICTION AND VENUE

2.     Jurisdiction of this Court is invoked under 15 U.S.C. §1692k(d), 28 U.S.C. §1331, and supplemental jurisdiction exists for the state law claims under 28 U.S.C. § 1367. Venue in this District is proper because Plaintiff resides in Nevada and

Law Offices of
CRAIG B. FRIEDBERG, ESQ.
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

1   Defendant's collection communications and acts occurred in Nevada and Defendant

2   does or transacts business in Nevada.

3                                        **PARTIES**

4       3.      Plaintiff is a natural person who resides in Las Vegas, Nevada.

5       4.      Plaintiff is allegedly obligated to pay a delinquent consumer debt, which

6   was owed Shadow Emergency Physicians, and is a "consumer" as that term is defined by

7   15 U.S.C.§ 1692a(3).

8       5.      Defendant Commonwealth is registered in Nevada as a foreign

9   corporation, and is in a default status since November 1, 2012, the principal purpose of

10  whose business is the collection of debts, operating a debt collection agency from its

11  principal place of business in Dickson City, PA, and who regularly collects or attempts to

12  collect debts owed or due or asserted to be owed or due another, from consumers in the

13  State of Nevada, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a.

14      6.      Defendant Commonwealth uses instrumentalities of interstate commerce

15  and the mails to conduct their principal business of collecting consumer debts, including

16  Plaintiff's alleged debt.

17      7.      Defendant Commonwealth, under its own name or under the name

18  Northeast Credit and Collections ("NCC"), has a license to do business as a collection

19  agency in Nevada.

20      8.      Plaintiff is unaware of the true names and legal capacities, whether

21  individual, corporate, associate, or otherwise, of the Defendants DOES I-V and ROE

22  Corporations VI-X, sued herein inclusive, and therefore sues Defendants by such

23  fictitious names.

24      9.      Plaintiff is informed and believes, and thereon alleges, that each of the

25  Defendants designated herein as DOES I-V and ROE Corporations VI-X, are in some

26  way legally responsible and liable for the events referred to herein, and proximately

27  caused the damages alleged herein.

28      10.     Plaintiff prays leave to insert said Defendants' true names and legal

- 2 -

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

1   capacities when ascertained.

2       11.    At all times material hereto, and in doing the acts and omissions alleged

3   herein, the Defendants and each of them, including DOES I-V and ROE Corporations

4   VI-X, acted individually and/or through their officers, agents, employees, and

5   coconspirators, including the fictitious Defendants named herein, each of whom was

6   acting within the purpose and scope of that agency, employment and conspiracy, and

7   said acts and omissions were known to, and authorized and ratified by, each of the other

8   Defendants.

9       12.    Plaintiff is informed and believes and thereon alleges that at all times

10  mentioned herein each of the Defendants sued herein was the owner, partner,

11  shareholder, manager, officer, director, agent, servant, and employee of his, her or its

12  co-Defendants and in doing the things hereinafter mentioned was acting in the scope of

13  his, her or its authority as such owner, partner, shareholder, manager, officer, director,

14  agent, servant and employee, and with the permission, consent and/or ratification of

15  his, her or its Defendants; and that each of said fictitiously named defendants, whether

16  an individual, corporation, association or otherwise, is in some way liable or responsible

17  to the Plaintiff on the facts hereinafter alleged, and caused injuries and damages

18  proximately thereby as hereinafter alleged.

19      13.    All conduct of Commonwealth and/or Doe and/or Roe Corporation

20  Defendants as alleged herein was on each other's behalf, within the course and scope of

21  agency each for the other; each was alter ego for the other and/or was in a partnership

22  or joint venture with the other, and all conduct of each was within the course and scope

23  of that agency, alter ego, partnership and/or joint venture, and as such, the corporate

24  fiction should be disregarded.

25                              **FACTUAL ALLEGATIONS**

26      14.    Plaintiff repeats, realleges and incorporates by reference paragraphs one

27  through thirteen, inclusive, above.

28      15.    Sometime on or about April 28, 2012, Defendant Commonwealth initiated

- 3 -

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

a campaign of abusive, unfair, unreasonable and unlawful debt collection activity

directed against Plaintiff Goodman in Las Vegas, Nevada.

16. Mr. Goodman is alleged to have incurred certain financial obligations with a company named Shadow Emergency Physicians ("SEP"), whose payment was allegedly never received, which then became a defaulted account. The alleged financial obligation to SEP was allegedly for medical services, which such service is primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. §1692a(5) and NRS 649.010.

17. Plaintiff Goodman did not receive any medical services from SEP and disputes that he owes any money to SEP or to Commonwealth.

18. In connection with the collection of the alleged SEP account in default, and even though Commonwealth is not licensed as a collection agency in the State of Nevada, Commonwealth, for its initial communication, on or about April 28, 2012, placed an interstate telephone call to Plaintiff's residence. When Plaintiff's wife, Mrs. Goodman, answered the telephone, the Commonwealth debt collector asked Mrs. Goodman whether the caller could speak with "Marcus Goodman." The caller did not tell Mrs. Goodman his name or that he was calling for Commonwealth, or that Commonwealth is a debt collector, or that he was attempting to collect a debt, or that the call was regarding an alleged past due account with SEP, or that any information she provided would be used to further Commonwealth's debt collection efforts, or a return telephone number. As Mrs. Goodman was not provided any other information except that the caller wished to speak to Marcus Goodman, and that her husband's (Plaintiff's) name is "Mark Goodman," Mrs. Goodman told the Commonwealth debt collector that he had called the wrong number and the Commonwealth employee hung up on Mrs. Goodman.

19. On or about May 10, 2012, Commonwealth again called Plaintiff's residence and this time Plaintiff answered. In this conversation, the Commonwealth debt collector again asked for Marcus. Plaintiff stated that his name was Mark

- 4 -

Law Offices of
CRAIG B. FRIEDBERG, ESQ.
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

Case 2:13-cv-00726-GMN-CWH   Document 1   Filed 04/28/13   Page 5 of 20

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887


1  Goodman, and asked the Commonwealth debt collector what the call was about.  The

2  Commonwealth debt collector stated it was about a personal financial matter.  Mr.

3  Goodman stated he has had no financial dealings with Commonwealth.  The

4  Commonwealth debt collector then told Mr. Goodman that he owed money to a

5  company that had bought a past due account on which Mr. Goodman allegedly owed.

6  Mr. Goodman was unable to get any more information about the matter from the

7  Commonwealth debt collector.  Mr. Goodman told the Commonwealth debt collector

8  that he wanted to speak to a supervisor, whereupon the Commonwealth debt collector

9  disconnected the call.

10       20.     Soon after this call ended, on May 10, 2012, Plaintiff called the telephone

11  number that showed up on the Caller ID screen on his telephone and when someone

12  answered, Mr. Goodman asked for a supervisor.  The Commonwealth debt collector who

13  answered the call identified himself as "Jeremy."  Jeremy explained that he was a floor

14  chief and would handle Mr. Goodman's call.  Mr. Goodman gave his name to Jeremy,

15  and Jeremy asked if Mr. Goodman was "Mark Goodman."  Mr. Goodman confirmed that

16  Mark Goodman was his name.  Jeremy then told Mr. Goodman that he owed debts that

17  were purchased from Shadow Emergency Group [sic] for treatment of an anxiety

18  disorder and chest pains. Mr. Goodman, knowing that he had not treated with Shadow

19  Emergency Group, asked Jeremy for specifics of the account, including where and when

20  Mr. Goodman was allegedly treated.  Jeremy refused to provide Mr. Goodman with the

21  identity of the hospital or any other facility where he was supposed to have been treated.

22  Mr. Goodman informed Jeremy that he has never been treated for those issues or by

23  Shadow Emergency Group. Jeremy responded that despite what Mr. Goodman said, he

24  owed the money and that Commonwealth would report the past due account to the

25  credit bureaus and it would be placed on Mr. Goodman's credit report.

26       Mr. Goodman requested that Commonwealth verify the allegedly past due

27  account and provided Jeremy with his correct mailing address. Jeremy told Mr.

28  Goodman that he owed Commonwealth $884.00, that the amount would increase if Mr.

1  Goodman did not make payment soon and told Mr. Goodman to send the money to
2  Commonwealth at 245 Main Street in Dickson City, PA.  Jeremy told Mr. Goodman that
3  he was wasting Jeremy's time, told Mr. Goodman to pay Commonwealth and hung up
4  on Mr. Goodman.

5      21.    The Commonwealth debt collectors did not tell Mr. Goodman, in either of
6  the two May 10, 2012 telephone conversations, that unless Mr. Goodman, within thirty
7  days after receipt of the information regarding the SEP account, disputed the validity of
8  the debt, or any portion thereof, that Commonwealth would assume the debt is valid.

9      22.    The Commonwealth debt collectors did not tell Mr. Goodman, in either of
10 the two May 10, 2012 telephone conversations, that if Mr. Goodman notified
11 Commonwealth in writing within the thirty-day period that the debt, or any portion
12 thereof, is disputed, Commonwealth would obtain verification of the debt and
13 Commonwealth would mail a copy of such verification to Mr. Goodman.

14     23.    The Commonwealth debt collectors did not tell Mr. Goodman, in either of
15 the two May 10, 2012 telephone conversations, that, upon Mr. Goodman's written
16 request within the thirty-day period, Commonwealth would provide him with the name
17 and address of the original creditor, if different from the current creditor.

18     24.    The Commonwealth debt collectors did not tell Mr. Goodman, in either of
19 the two May 10, 2012 telephone conversations, that any information he provided would
20 be used to further Commonwealth's debt collection efforts.

21     25.    After the two May 10, 2012 conversations with the Commonwealth debt
22 collectors, Mr. Goodman was frustrated and upset that he was not being listened to
23 when he told Commonwealth that he did not owe it or SEP any money and also was
24 scared about Commonwealth's threat to report to the credit reporting agencies false
25 information about the SEP account, attributing non-payment to Mr. Goodman, thereby
26 lowering his credit score and marring his very good credit profile.

27     26.    Mr. Goodman did not receive any written materials from Commonwealth
28 after either the April 28, 2012 or the May 10, 2012 telephone conversations with

- 6 -

Commonwealth.

27.     After the two telephone calls with Commonwealth debt collectors on May 10, 2012 were completed, Plaintiff conducted internet research on "Shadow Emergency Group." He was not able to locate any information on an entity by that name, but he did find information about "Shadow Emergency Physicians" and called the telephone number he found for SEP.  Mr. Goodman spoke with two different SEP employees in its billing department. They each searched SEP records and found that although SEP has treated a number of persons named Mark Goodman, they had never treated anyone who had Plaintiff's name, date of birth and address.  The SEP personnel told Mr. Goodman that SEP would contact Commonwealth and verify to it that Plaintiff was not a former patient and therefore, did not owe SEP any money.

28.     On or about May 17, 2012, Plaintiff received a call whose number showed up in Plaintiff's Caller ID display as a local southern Nevada number.  Commonwealth had spoofed the local Nevada number to hide the fact that it was calling from Pennsylvania and increase the chance that the recipient of the call, believing that a local Nevadan was calling, would answer the call.  Not knowing that Commonwealth was the one calling, and recognizing that the telephone number his Caller ID displayed was a local number,  Mr. Goodman answered the call.

When Plaintiff answered, he was greeted by a Commonwealth debt collector, who identified herself as "Alicia."  Alicia informed Mr. Goodman that she was attempting to collect a debt, but never told him that he had the right to dispute the SEP account or that any information he provided would be used by Commonwealth to further its debt collection efforts.  Alicia told Mr. Goodman that he owed three unpaid bills to SEP.  Mr. Goodman told Alicia that since they were not bills he incurred, he would not pay them.  Mr. Goodman again asked for information regarding the supposed treatment he received from SEP.  Again, the Commonwealth debt collector refused to provide Mr. Goodman with any information regarding the services allegedly rendered, including not even telling him where he was supposedly treated by SEP doctors.  The only information

- 7 -

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

Alicia gave Mr. Goodman was that he owed Commonwealth for three charges: $47, $50 and $834, gave him the respective account numbers assigned to the three amounts, and told him the date for treatment for chest pain was March 23, 2009.  The call ended after Mr. Goodman again asked for Commonwealth to mail him the SEP bill(s) and advised Alicia a second time that he was not treated by SEP for chest pain and that he did not owe any money to SEP or Commonwealth.

29.    After the May 17, 2012 conversation with the Commonwealth debt collector, Mr. Goodman was even more frustrated, upset and concerned that his credit score and credit profile would be damaged by Commonwealth, even though Commonwealth knew that they are dunning Mr. Goodman for debts that are not his, and that he did not owe any money to SEP or to Commonwealth.

30.    On or about May 29, 2012, Commonwealth called Plaintiff again. This time when he answered the telephone he heard a recording that told him to stay on the line for an important message.  Mr. Goodman did stay on the line, and the Commonwealth debt collector who picked up asked Mr. Goodman if he called her or she called him.  Mr. Goodman explained that he answered a call to his telephone number and when he answered he received the recording telling him to stay on the line.  The Commonwealth debt collector asked Mr. Goodman what is his name, he responded "Mark Goodman" and the Commonwealth debt collector identified herself as "Ann Hall."

Ann told Mr. Goodman that she was calling from Commonwealth about a debt he owed to SEP, but she never explained to Mr. Goodman that he had the right to dispute the SEP account or that any information he provided would be used by Commonwealth to further its debt collection efforts. Mr. Goodman told Ann that Commonwealth had called him before, and told her what he had told the previous Commonwealth debt collectors, that he did not owe SEP or Commonwealth anything, that he has been asking that Commonwealth mail him something in writing to explain the alleged debt to SEP, and that he would not pay a bill which he did not owe.

Ann told Mr. Goodman that Commonwealth had mailed proof of the debt to Mr.

- 8 -

Goodman, but that it was returned by the post office.  Ann then gave an address to Mr. Goodman and he verified that the address she had on file was his mailing address.  Ann then asked Mr. Goodman to hold, and another Commonwealth debt collector, who identified himself as "Robert" came on the line.

31.     Despite Mr. Goodman's continual admonishments to the Commonwealth debt collectors that he was not treated by SEP, and thus, did not owe SEP or Commonwealth any money, when Robert came on the line, he told Mr. Goodman that he owed the money. Robert did not explain to Mr. Goodman that he had the right to dispute the SEP account or that any information he provided would be used by Commonwealth to further its debt collection efforts. Extremely frustrated, Mr. Goodman again told Robert that he did not owe Commonwealth or SEP, that he never received any bills from SEP, that he pays his bills, and that he was very concerned about the harm that Commonwealth might do to his credit by reporting false information about the SEP account to the credit reporting agencies.

Robert then informed Mr. Goodman that Commonwealth had already reported the false information to some of the credit reporting agencies.  Robert also promised (again) that Commonwealth would mail proof of the SEP debt to Mr. Goodman.  Mr. Goodman, now very exasperated about this situation, told Robert that he was concerned over the credit damage Commonwealth's reporting may have caused; that he did not know anything about the services supposedly rendered to him by SEP, that he was not going to pay Commonwealth when he did not owe it anything, and that no one at Commonwealth had yet told him the name of the physician that allegedly rendered treatment to him or where he was supposedly treated to incur the disputed charges. Robert's only response was to demand that Mr. Goodman pay Commonwealth despite what Mr. Goodman had explained to him.

32.     Plaintiff is informed and believes and thereon alleges that in or around late May 2012 and early June 2012, Commonwealth, knowing that Mr. Goodman had repeatedly disputed that he owed any money to SEP, nonetheless reported to credit

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

1    reporting agencies that the SEP account(s) were for charges that Mr. Goodman

2    incurred, that the charges were unpaid and that the account(s) were now in collections.

3    Commonwealth also failed to advise the credit reporting agencies that prior to the time

4    it reported the SEP account information to them, Mr. Goodman disputed the accuracy of

5    the account information to Commonwealth.  Commonwealth did not use it true name

6    when reporting the false credit information to Equifax Information Services, Inc.

7        Plaintiff is informed and believes and thereon alleges that his credit score and

8    credit worthiness was damaged by Commonwealth's communication regarding credit

9    information that it knew or which it reasonably should have known to be false, including

10   its failure to communicate to the credit reporting agencies that Mr. Goodman disputed

11   the credit information and the debt that it reported to them.

12       33.    Plaintiff was very upset by the Commonwealth debt collectors' continued

13   unfulfilled promises that Commonwealth would be immediately mailing out written

14   verification of the alleged SEP debt, plus being told that Commonwealth, despite his

15   numerous disputes regarding the SEP charges,  had already sent in the negative SEP

16   account information to the credit reporting agencies.

17       34.    On or about June 4, 2012, Mr. Goodman received a telephone call whose

18   number showed up in Plaintiff's Caller ID display as a local southern Nevada number.

19   Commonwealth again spoofed a local Nevada number to hide its actual name and

20   number from appearing on Mr. Goodman's Caller ID display.  When Mr. Goodman

21   answered the telephone call, there was a Commonwealth debt collector on the line. He

22   identified himself as "Eric."

23       For the first time in the series of telephone conversations Mr. Goodman had with

24   various Commonwealth debt collectors, Eric informed Mr. Goodman that SEP was

25   located in Henderson, NV.  Eric also confirmed that Commonwealth had reported

26   derogatory credit information about Mr. Goodman to the credit reporting agencies and

27   that said reporting likely lowered Mr. Goodman's credit score and damaged his credit

28   reputation.  Eric also told Mr. Goodman that SEP had provided Commonwealth with

- 10 -

1   Mr. Goodman's name, address and date of birth, which contradicted what Mr. Goodman

2   was told by the SEP personnel on May 10, 2013.  Eric did not tell Mr. Goodman that he

3   had the right to dispute the SEP account or that any information he provided would be

4   used by Commonwealth to further its debt collection efforts.

5       Mr. Goodman told Eric that despite the many times Commonwealth debt

6   collectors had promised that Commonwealth would mail proof that Mr. Goodman owed

7   the alleged debt Commonwealth was attempting to collect from him, Mr. Goodman had

8   never received anything in writing from Commonwealth.  Eric assured Mr. Goodman

9   that he would send out the requested information that day. Eric continued to demand

10  that Mr. Goodman pay on the SEP accounts, telling Mr. Goodman that there were three

11  charges he for which he was responsible.  Mr. Goodman explained to Eric that he was

12  not treated for a heart condition or had an emergency room visit on the date Eric

13  provided as when the charges were incurred.

14      Eric advised Mr. Goodman that the only way Commonwealth might reconsider its

15  collection strategy is if, after receiving Commonwealth's verification of the alleged debt

16  in the mail, Mr. Goodman could prove that he was not treated in the hospital.

17  Otherwise, Mr. Goodman  needed to pay Commonwealth the entire amount it claimed

18  Mr. Goodman owed before Commonwealth would consider asking the credit reporting

19  agencies to remove the false derogatory credit information Commonwealth had

20  previously communicated to them.

21      35.   Plaintiff was very distressed by Commonwealth's repeated refusal to

22  correct the false derogatory credit information it had communicated to the credit

23  reporting agencies was to Plaintiff.  Plaintiff was also angry and frustrated because

24  Commonwealth refused to honor its many promises of providing Plaintiff with written

25  proof that he owed the disputed SEP charges; thus preventing Plaintiff from being able

26  to address SEP's specific  charges set forth in its bill(s) in order to convince

27  Commonwealth that he did not owe any money to SEP or to Commonwealth.

28      36.   On or about June 11, 2012, Commonwealth again called Mr. Goodman

Law Offices of
CRAIG B. FRIEDBERG, ESQ.
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

1   about the SEP charges.  The Commonwealth debt collector identified himself as "John

2   McDonald."  John had Mr. Goodman again verify that the mailing address

3   Commonwealth had on file for him was correct. John did not did not tell Mr. Goodman

4   that he had the right to dispute the SEP account or that any information he provided

5   would be used by Commonwealth to further its debt collection efforts.  Mr. Goodman

6   explained to John that he (Mr. Goodman) did not incur the SEP charges and that he still

7   not received the first written communication from Commonwealth.  John admitted that

8   Commonwealth had the correct address for Mr. Goodman.

9       John then transferred Mr. Goodman to "Eric Lucas," who John stated was the

10  person in charge of Mr. Goodman's account.  Once transferred, John was no longer on

11  the line and Eric did not answer the transferred telephone call.

12      37.     On or about June 15, 2012,  Commonwealth again called Mr. Goodman

13  about the SEP charges.  The Commonwealth debt collector identified himself as "John

14  Lee." John Lee had Mr. Goodman again verify that the mailing address Commonwealth

15  had on file for him was correct. John Lee did not did not tell Mr. Goodman that he had

16  the right to dispute the SEP account or that any information he provided would be used

17  by Commonwealth to further its debt collection efforts.

18      John Lee then transferred Mr. Goodman to "Eric Lucas."  Once transferred, John

19  Lee was no longer on the line and Eric did not answer the transferred telephone call.

20      38.     On or about June 18, 2012, Commonwealth again called Mr. Goodman

21  about the SEP charges.  The Commonwealth debt collector identified himself as "Carl"

22  and demanded payment from Mr. Goodman.  Carl did not did not tell Mr. Goodman that

23  he had the right to dispute the SEP account or that any information he provided would

24  be used by Commonwealth to further its debt collection efforts.  Mr. Goodman once

25  again told a Commonwealth debt collector that he did not owe any money to SEP or

26  Commonwealth.  Mr. Goodman also told Carl that the charges were not his and that he

27  wanted something in writing that showed that the SEP charges were incurred by him.

28  Carl told Mr. Goodman that verification of the SEP charges had been mailed to him on

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

1   June 5, 2012. Mr. Goodman responded that he had not received anything from

2   Commonwealth and Carl said he would re-mail the verification information.  Mr.

3   Goodman suggested that Commonwealth send the information certified mail, return

4   receipt requested so that there would be proof of delivery of the mailed verification

5   information.

6         39.   Once again, after yet another broken promise, Plaintiff did not receive any

7   written verification information.

8         40.   On or about June 18, 2012, Plaintiff typed a letter to Eric Lucas, care of

9   Commonwealth.  In the letter, Mr. Goodman recounted all of the harassing acts

10  Commonwealth has done in attempting to collect the SEP charges from him, as set out

11  more fully in paragraphs 14 through 39, above.  In the letter, Mr. Goodman again

12  disputed that he owed SEP or Commonwealth any money and demanded that

13  Commonwealth remove the false derogatory credit information it had communicated to

14  the credit reporting agencies within seven days of receipt of the letter.  Mr. Goodman

15  also notified Commonwealth that he did not receive any written communication from it,

16  including the promised verification information. Mr. Goodman also put Commonwealth

17  on notice that he "d[id] not owe this debt and refuse[d] to pay it."

18        Mr. Goodman mailed the letter to Commonwealth on June 19, 2012, as certified

19  mail no. 70100290000263774530, return receipt requested. He received the return

20  receipt indicating that the letter was delivered to Commonwealth on June 22, 2012. *See*

21  Exhibit 1 to the Complaint.

22        41.   On or about June 25, 2012, Commonwealth again called Mr. Goodman

23  about the SEP charges.  The Commonwealth debt collector identified herself as "Karen

24  Gates" and demanded payment from Mr. Goodman.  Karen did not did not tell Mr.

25  Goodman that he had the right to dispute the SEP account or that any information he

26  provided would be used by Commonwealth to further its debt collection efforts.  Karen

27  acknowledged that Commonwealth had received Mr. Goodman's June 18, 2012 letter.

28  Karen again verified that the address Commonwealth had listed for Mr. Goodman was

- 13 -

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968  Telecopier (702) 946-0887

accurate, and then told Mr. Goodman that Commonwealth would mail out the requested information within the next two weeks.  This did not occur.

42.    On or about July 23, 2012, Plaintiff received the first written communication from Commonwealth.  It included a demand for payment, and had a salutation to someone named "Heath." It was signed by Matthew Richardson and dated July 19, 2012.  The letter included a "statement of account" from SEP, with a Phila., PA address. The bill did not have Mr. Goodman's name as the patient, but instead indicated that "Marcus Goodman" was the patient.  It also did not list Mr. Goodman's address as the address of Marcus Goodman.  It listed Marcus Goodman's address as "General Delivery, Las Vegas, NV 89125."  Even the zip code was different from the address that Commonwealth continually verified as Mr. Goodman's correct address.

43.    Through no help from Commonwealth, Plaintiff was finally able to have the false derogatory information Commonwealth had communicated to the credit reporting agencies deleted from his credit profile maintained by each agency.

**CLAIMS FOR RELIEF**

**COUNT ONE**

**(Violations of Federal Fair Debt Collection Practices Act)**

44.    Plaintiff repeats, realleges and incorporates by reference, paragraphs one through forty-three, inclusive, above.

45.    The foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, including but not limited to:

(a)    Continuing to contact Plaintiff and demanding payment of the alleged debt after receiving written notification that Plaintiff refuses to pay the alleged debt (§1692c);

(b)    Engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff (§1692d);

(c)    Placing telephone calls without disclosing the debt collector's identity (§1692d(6));

- 14 -

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

1       (d)    Using false, deceptive, or misleading representations or means in

2   connection with collection of a debt (§1692e);

3       (e)    Misrepresenting the character, amount or legal status of the alleged

4   debt (§1692e(2));

5       (f)    Threatening to take any action that cannot legally be taken or that is

6   not intended to be taken (§1692e(5));

7       (g)    Threatening to communicate, or communicating, false credit

8   information, including the failure to communicate that a debt is disputed (§1692e(8));

9       (h)    Using false representations and deceptive practices in connection

10  with collection of an alleged debt from Plaintiff (§1692e(10));

11      (I)    Failing to provide notice in the initial communication that the

12  communication is an attempt to collect a debt, that the communication is from a debt

13  collector and that any information obtained will be used for that purpose (§1692e(11));

14      (j)    Failing to provide notice in all subsequent oral communications

15  that any information obtained by the debt collector will be used for the purpose of

16  collecting a debt (§1692e(11));

17      (k)    Using a name other than the true name of the debt collector's

18  business in its attempt to collect a debt (that any information obtained will be used for

19  that purpose (§1692e(14));

20      (l)    Using unfair or unconscionable means against Plaintiff in

21  connection with an attempt to collect a debt (§1692f);

22      (m)    Attempting to collect any amount not authorized by the agreement

23  creating the debt or permitted by law (§1692f(1));

24      (n)    Failure to send the 30-day validation notice within five days of the

25  initial communication (§1692g);

26      (o)    Failure to provide the required disclosures as required by the

27  FDCPA (§1692g(a)); and

28      (p)    Failure to cease collection efforts until the alleged debt is validated

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

1   (§1692g(b)).

2       46.    As a result of each and every violation of the FDCPA, the plaintiff is

3   entitled to any actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in

4   an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable

5   attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from the defendant.

6   <strong>COUNT TWO</strong>

7   <strong>Violation of State Acts</strong>

8   <strong>NRS 598.0915 to 598.0925, NRS 649.355, 649.370, 649.375, NRS 41.600</strong>

9       47.    Plaintiff repeats, realleges and incorporates by reference, paragraphs one

10   through forty-six, inclusive, above.

11       48.    The Nevada Deceptive Trade Practice Act (NDTPA) prohibits the use of

12   deceptive and illegal business practices.

13       49.    Defendant did engage in business practices that were deceptive and illegal.

14       50.    Plaintiff did not have a preexisting business relationship with the

15   Defendant.

16       51.    Defendant violated the FDCPA and NRS 649.355, 649.370 and 649.375 by

17   engaging in abusive and illegal debt collection practices, as hereinabove described.

18       52.    Those illegal debt collection practices were aimed at Plaintiff and caused

19   injury to Plaintiff.

20       53.    That Defendant, by violating the TCPA, the FDCPA and NRS sections set

21   forth above, were involved in a deceptive trade practice, pursuant to NRS 598.0923(3),

22   which states in pertinent part:

23       NRS 598.0923 "Deceptive trade practice" defined, A person engages in a
"deceptive trade practice" when in the course of his business or occupation

24   he knowingly:
                  * * *

25   3. Violates a state or federal statute or regulation relating to the sale or
lease of goods or services.

26       54.    NRS chapters 598 (NDTPA) and 649 (collection agency practices), in

27   tandem, allow a Nevada state law claim for deceptive trade practices where the

28   - 16 -

Law Offices of
CRAIG B. FRIEDBERG, ESQ.
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

1   collection agency engages in harassing tactics, which has been defined by NRS 649.370

2   as "a violation of any provision of the federal Fair Debt Collection Practices Act, 15

3   U.S.C. §§ 1682[sic] et seq., or any regulation adopted pursuant thereto, shall be deemed

4   to be a violation of this chapter."

5       55.     Defendant's acts and omissions, as set forth above, in addition to violating

6   NRS 649.370, also violated NRS 649.171, and 649.375(1), (2) and (5), which, in turn, are

7   violations of NRS 598.092(8) (conducting a business in which it "[k]nowingly

8   misrepresent[ing] the legal rights, obligations or remedies of a party to a transaction);

9   598.598.0923(1), (3) & (4) (conducting a business (1) "without all required state, county

10  or city licenses," (3) in which it "[v]iolates a state or federal statute or regulation relating

11  to the sale or lease of goods or services" or (4) by using "coercion, duress or intimidation

12  in a transaction"); and NRS 598.0915(15) ("knowingly mak[ing] any other false

13  representation in a transaction").

14      56.     Defendant, by reason of violating NRS 598.092(8), 598.0923(1), (3) & (4),

15  and 598.0915(15), has committed acts which are the subject of a state cause of action,

16  pursuant to NRS 41.600(2)(d), which states in pertinent, part:

17  NRS 41. 600 Actions by victims of fraud.
18  1. An action may be brought by any person who is a victim of consumer
    fraud.
    2. As used in this section, "consumer fraud" means;
19                                      * * *
        (d) A deceptive trade practice as defined in NRS 598. 0915 to
20  598.0925, inclusive.
    3. If the claimant is the prevailing party, the court shall award him;
21          (a) Any damages that he has sustained; and
        (b) His costs in the action and reasonable attorney's fees.
22

23      57.     Defendant acted in bad faith and unfairly with the intent to deprive

24  Plaintiff of his rights or property.  Furthermore, Defendant knew of the probable

25  harmful consequences of its wrongful acts and engaged in a willful and deliberate failure

26  to act to avoid those consequences.

27      58.     As a result of the above violations of the NDTPA, Defendant is liable to

28  Plaintiff in an amount of actual damages, exemplary damages, attorney fees and costs.

Law Offices of
CRAIG B. FRIEDBERG, ESQ.
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

## COUNT THREE
### Violation of State Acts
### NEGLIGENCE PER SE

59.     Plaintiff repeats, realleges and incorporates by reference, paragraphs one through fifty-eight, inclusive, above.

60.     Defendant's outrageous, abusive and intrusive acts as described herein constituted negligence.

61.     Defendant negligently inflicted emotional distress on plaintiff.

62.     Defendant breached a duty imposed and failed to exercise ordinary care.

63.     Defendant owed plaintiff a duty to refrain from unlawful debt collection activities (15 U.S.C. § 1692 et seq., NRS 649.370 and 649.375).

64.     The breach of such duty proximately caused injury to plaintiff.

65.     The injury resulted from an occurrence the nature from which these statutes were designed to protect plaintiff.

66.     Plaintiff is a member of the class of persons the statutes were designed to protect.

67.     Defendant's conduct, as described herein, was wrongful conduct in that Defendant conducted its business in an abusive, oppressive, and harassing manner.

68.     Defendant negligently trained, supervised, and retained its employees and agents.

69.     Defendant's wrongful conduct as described herein actually and proximately caused the Plaintiff severe and serious emotional distress.

70.     It is clearly foreseeable that Defendant's actions as described herein could cause harm, including severe and serious emotional distress.

71.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages in an amount to be determined at trial. Defendant's wrongful conduct as described herein actually and proximately caused the Plaintiff's harm as noted above.

- 18 -

72.     Defendant acted with oppression, and/or malice, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial. Defendant acted in a despicable manner and acted with a conscious disregard to Plaintiff's rights.

## COUNT FOUR

### Violation of State Acts

### INVASION OF PRIVACY

73.     Plaintiff repeats, realleges and incorporates by reference paragraphs one through seventy-two, inclusive, above.

74.     Plaintiff has a reasonable expectation of privacy at home such that defendant would not continue to communicate and harass plaintiff and engage in unlawful, intrusive, and abusive telephone calls in an effort to collect a debt.

75.     The above described conduct demonstrates that defendant intentionally intruded on plaintiff's privacy by, among other things, unlawfully placing calls in an abusive and harassing manner.

76.     Courts have held that repeated and continuous calls in an attempt to collect a debt give rise to a claim for intrusion upon seclusion. *Kuhn v. Account Control Technology, Inc.*, 865 F.Supp. 1443, 1448-49 (D.Nev. 1994); *Pittman v. J. J. MacIntyre Co. of Nevada, Inc.*, 969 F.Supp. 609, 613-14 (D.Nev. 1997).

77.     These intrusions and invasions against the Plaintiff by Defendant repeatedly making multiple telephone calls to Plaintiff for a debt Plaintiff did not owe occurred in a way that would be highly offensive to a reasonable person in Plaintiff's position.

78.     Defendant's conduct has caused stress, tension and aggravation that adversely affected Plaintiff. Plaintiff was so aggravated he suffered from, including, but not limited to, headaches, loss of sleep, frustration, anxiety and general sense of uncertainty.

79.     In the conduct described above, Defendant was guilty of oppression, fraud, or malice for the fact that Defendant's intrusions against Plaintiff occurred in a way that

- 19 -

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968   Telecopier (702) 946-0887

violated state and federal debt collection laws, all of which shows the audacity and impudent tactics that Defendant employed in its effort to collect money from Plaintiff.

80.   In the conduct described above, defendant is guilty of oppression, fraud, or malice.

81.   As a result of such invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined according to proof.

82.   Since the acts of Defendant alleged above were willful, wanton, malicious, and/or oppressive, they justify the awarding of exemplary and punitive damages.

83.   Defendant acted with a conscious disregard of Plaintiff's rights.

### DEMAND FOR JURY TRIAL

84.   Please take notice that Plaintiff demands trial by jury in this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays, that this Court grant the following relief in his favor, and that judgment be entered against Defendant for the following:

(1)   For statutory damages;

(2)   For actual damages;

(3)   For exemplary damages;

(4)   For reasonable attorney fees for all services performed by counsel in connection with the prosecution of this claim;

(5)   For reimbursement for all costs and expenses incurred in connection with the prosecution of this claim; and

(6)   For any and all other relief this Court may deem appropriate.

DATED this 27th day of May 2013.

Respectfully submitted by:

*/s/ Craig B. Friedberg, Esq.*
CRAIG B. FRIEDBERG
4760 South Pecos Road, Suite 103
Las Vegas, Nev. 89121
Attorney for Plaintiff

*Law Offices of*
**CRAIG B. FRIEDBERG, ESQ.**
4760 SOUTH PECOS ROAD, SUITE 103
LAS VEGAS, NEVADA 89121
(702) 435-7968  Telecopier (702) 946-0887

- 20 -